DECISION AND JOURNAL ENTRY
{¶ 1} Appellants, Rebecca and Robert Stone ("the Stones"), appeal from the decision of the Akron Municipal Court. This Court affirms.
 I. {¶ 2} In June of 2006, an employee of Appellee, Storm Kings Inc. ("Storm Kings"), approached the Stones' home regarding a roof replacement. On June 16, 2006, Mrs. Stone signed a document in which Storm Kings agreed to replace the Stones' roof. On June 21, 2006, Storm Kings began work on the Stones' roof. In the early morning hours of June 22, 2006, a thunderstorm occurred and water leaked through the unfinished roof. The amount of leakage and property damage was disputed. Storm Kings completed the replacement of the Stones' roof on June 27, 2006. When Storm Kings requested payment, Mrs. Stone refused to pay. *Page 2 
 {¶ 3} Kevin Jarvis ("Jarvis"), Storm Kings' owner, filed suit on behalf of Storm Kings, alleging breach of contract, quantum meruit/unjust enrichment, and fraud. He requested punitive damages and legal fees. The Stones filed an answer, third party complaint, and a counterclaim alleging that Storm Kings violated the Home Solicitation Sales Act. On January 8, 2007, Jarvis filed an amended complaint, naming Storm Kings as plaintiff. On March 22, 2007, a jury trial commenced. On March 23, 2007, the jury awarded Storm Kings $3,284.96 for breach of contract against Mr. Stone, and $3,284.97 for breach of contract against Mrs. Stone. Further, the jury found the Stones liable for fraud and awarded Storm Kings attorney's fees and $1.00 in punitive damages. It appears from the jury interrogatories that the $1.00 was specifically related to Mrs. Stone.
 {¶ 4} On April 17, 2007, the trial court conducted a hearing on the issue of attorney's fees. Storm Kings requested a continuance to present an expert witness. The trial court granted the continuance. On May 30, 2007, Storm Kings' expert witness testified as to the attorney's fees. The trial court awarded Storm Kings attorney's fees in the amount of $9,525.00.
 {¶ 5} On June 12, 2007, the Stones moved for a judgment notwithstanding the verdict ("JNOV") or, in the alternative, for a new trial. On August 31, 2007, the trial court granted the motion in part, finding in the Stones' favor on their Home Solicitation Sales Act counterclaim. The trial court determined that the Stones suffered no damages and awarded them $200 in statutory damages. The trial court denied their motion as to the breach of contract and fraud claims. The Stones timely appealed, raising three assignments of error for our review. *Page 3 
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT WRONGLY DENIED [THE] STONES' MOTION FOR A DIRECTED VERDICT AND MOTION FOR JUDGMENT N.O.V. ON STORM KINGS' FRAUD CLAIM."
 {¶ 6} In their first assignment of error, the Stones contend that the trial court wrongly denied their motion for a directed verdict and motion for a JNOV on Storm Kings' fraud claim. We do not agree.
 {¶ 7} When reviewing the propriety of a trial court's decision regarding a JNOV, an appellate court employs the standard of review applicable to a motion for a directed verdict. Posin v. A.B.C. MotorCourt Hotel, Inc. (1976), 45 Ohio St.2d 271, 275. An appellate court reviews a trial court's ruling on a motion for a directed verdict de novo, as it presents an appellate court with a question of law.Schafer v. RMS Realty (2000), 138 Ohio App.3d 244, 257, citingNichols v. Hanzel (1996), 110 Ohio App.3d 591, 599. A motion for a directed verdict assesses the sufficiency of the evidence, not the weight of the evidence or the credibility of the witnesses. Strother v.Hutchinson (1981), 67 Ohio St.2d 282, 284, citing Durham v. WarnerElevator Mfg. Co. (1956), 166 Ohio St. 31, 36.
 {¶ 8} In accordance with Civ. R. 50(A)(4), a directed verdict is properly granted when "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party[.]" Furthermore, if the party opposing the motion for a directed verdict fails to produce any evidence on one or more of the essential elements of a claim, a directed verdict is appropriate.Hargrove v. Tanner (1990), 66 Ohio App.3d 693, 695. Conversely, the motion must be denied where *Page 4 
substantial evidence exists upon which reasonable minds may reach different conclusions. Posin, 45 Ohio St.2d at 275.
 {¶ 9} In its complaint, Storm Kings alleged that the Stones "lied to [Storm Kings] about the insurance funds being in their hands and engaged in knowingly false claims that [Storm Kings'] work was deficient; all to fraudulently try and defeat [Storm Kings'] legitimate right to payment, entitling [Storm Kings], in addition to compensatory damages, punitive damages commensurate with [the Stones'] ability to pay, legal fees and costs."
 {¶ 10} In order to establish fraud, the following elements are required:
 "`(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.'" Cohen v. Lamko Inc. (1984), 10 Ohio St.3d 167, 169, quoting Friedland v. Lipman (1980), 68 Ohio App.2d 255.
 {¶ 11} Specifically, on appeal, the Stones contend that Storm Kings failed to produce evidence that it justifiably relied on any misrepresentation made by Mrs. Stone. Although justifiable reliance is an essential element of fraud, the Stones' argument on appeal narrowly focuses on justifiable reliance solely as it pertains to Mrs. Stones' statements regarding the insurance check. We begin our analysis by reviewing the claims in the complaint. As we stated above, Storm Kings' fraud allegation not only pertained to Mrs. Stones' statements, but also that the Stones "engaged in knowingly false claims that [Storm Kings'] work was deficient[.]" We find that Storm Kings presented ample evidence below of a broader range of fraudulent actions, and not just evidence that Mrs. Stone lied about the insurance check. In this regard, the trial court found that "[t]here was evidence upon which the jury could have reasonably found that the Stones fabricated their damages so that they could avoid paying Storm Kings." We agree. *Page 5 
Despite the Stones' narrow argument on appeal, we find that substantial evidence exists upon which reasonable minds could reach different conclusions with regard to Storm Kings' claim that the Stones engaged in knowingly false claims.
 {¶ 12} In its case-in-chief, Storm Kings called Mr. and Mrs. Stone as if on cross-examination. Mrs. Stone testified to the form contract that she received from Storm Kings. The contract stated that it was "to be completed upon approval by the insurance company. * * * All materials will be ordered upon receiving the first check from the insurance company." She further testified that her insurance company approved funds for the roof repair. Mrs. Stone explained that she had received the funds from her insurance company on June 21, 2006, the day Storm Kings commenced work on her home. She further stated that Jarvis called her that day and told her "to keep looking for the check, that it was mailed." She explained that she did not inform him that she had received the check that day. She admitted that when Jarvis subsequently called her and asked if she had received the check, she lied and said she had not yet received it. Mrs. Stone testified that "[m]y insurance company said I can use the check as a bargaining tool to get things done[.]"
 {¶ 13} Mrs. Stone stated that sometime during the morning of June 22, 2006, there was a large thunderstorm. She stated that when the roofers left on June 21, 2006, they had covered her roof with felt. Mrs. Stone had Jarvis come to her home on the morning of June 22, 2006, to observe the alleged water damages. She explained that Jarvis was there "[b]ecause there was water dripping out of my ceiling fan. There was water dripping at the bottom of the basement steps there. It rained through the attic and down the slant of the basement steps to the bottom of the steps. There was water running in my daughter's bedroom window where it was running down[.]" She testified that she explained all of this to Jarvis when he came to the home on June *Page 6 
22. Mrs. Stone testified that once the roof was complete, it did not leak. When asked about her claims against Storm Kings, Mrs. Stone stated "[w]hen they left me with no tarps and it rained and damaged my home. That's not the workmanlike manner." According to Mrs. Stone, after Storm Kings completed the roof, her husband had to repair a small portion of flashing. However, no expert testified to substantiate the Stones' claim that the repairs were necessary. Mrs. Stone further claimed that her home was left uncovered for four nights and that it rained on several of those nights. Mrs. Stone also stated that Storm Kings used the wrong size shingles to complete her roof. She further testified that the fire department came to her home on June 22 and left it up to her whether to turn her electricity off. Mrs. Stone was asked "[i]f it was serious enough, isn't it reasonable to assume the fire department would have made the decision for you?" She answered yes.
 {¶ 14} Mr. Stone testified that his wife had signed the initial contract with Storm Kings but that he was involved in later negotiations. He testified that he had to repair a small portion of flashing on the roof after its completion. He explained that this was necessary because Storm Kings damaged some existing flashing behind the vinyl siding and instead of removing the siding, Storm Kings "just stuck some pieces of new stuff in there from inside the attic which would be on the back side of where it needed to be to be doing any good." He testified that it was not true that Storm Kings did the work in this manner because one of the workers was almost electrocuted because of wires that ran through the siding. Mr. Stone stated that after the June 22 thunderstorm, a lot of rain leaked into the home. According to Mr. Stone, "[w]e had to change towels on our dining room table to keep it from running onto the carpet." He further explained that there was a half full glass of water on top of the towel. *Page 7 
 {¶ 15} Jarvis testified that he used a standard contract for all of his clients. He explained that one of his salesmen had gone to the Stones' home and informed them that their roof had been damaged by hail. According to Jarvis, the Stones agreed to hire Storm Kings to replace the roof. Jarvis first spoke with the Stones' insurance adjuster. Jarvis testified that the insurance adjuster told him
 "`the damage is extensive. I've got to pay the claim,' but he says, `Hey, let me tell you. All State will be all over me as soon as I pay this claim. The only way I can make this work is to send the check on the day you start the job,' and I agreed to it. I said, `Hey, if it will get them a roof, I'll do it that way. Normally we get the money up front.'"
 {¶ 16} Jarvis verified that according to the standard Storm Kings contract, payment was required prior to the start of the job. He stated that Mrs. Stone signed the standard contract. Jarvis testified that "I did make, you know, a little leeway there for them because of what the insurance adjuster had told him. According to Jarvis, prior to the start of the job, the insurance adjuster sent him a loss statement. Jarvis testified that the job began on June 21. He stated that at the end of the work day, the roof was covered in felt. According to Jarvis, a large rainstorm occurred during the early morning hours of June 22. He went to the Stones' home to do a walk through of the home. Jarvis testified that he "didn't observe anything dripping from ceilings. I didn't observe any brown spots on the ceilings. I did see the towel sitting on her table with a glass on it." He also walked through the attic and stated that the attic insulation was "dry as a bone[.]" "I told him, [w]ell, this insulation is perfectly dry, so I went from end to end. He could see marks in the attic. Those marks were actually dust marks from tearing off the roof. Everything was dry." Despite his observations, Jarvis testified that he had the roofers remove some insulation from the spots in the attic that concerned the Stones. After the roof was completed, the roofers attempted to put the insulation back into the attic but Mrs. Stone would *Page 8 
not allow them back into the house. He further testified that "I wasn't given an opportunity to fix the insulation."
 {¶ 17} Storm Kings' counsel asked Jarvis if he had spoken to Mrs. Stone about the insurance check. Jarvis replied that he had spoken with her "[s]everal times while the job was going on. There were three different occasions I asked Ms. Stone about the check." According to Jarvis, Mrs. Stone told him that she had not received the check. Jarvis later learned that Mrs. Stone had had the check since June 21. Jarvis testified to the loss statement that he had generated with the insurance adjuster. The loss statement identified what should be replaced on the Stones' roof. Jarvis confirmed that the loss statement "generates how much the insurance company check is going to be[.]"
 {¶ 18} Finally, Jarvis testified as to the flashing that Mr. Stone felt was necessary to repair. Jarvis stated that "[o]ne of my guys almost got electrocuted. They have an electric service that goes through that part of the roof and he opted to flash from the inside of the house [not to] get shocked again because it is-it's 220 coming through there. It could have killed him." He testified that he had been a roofer for 26 years and the repairs Mr. Stone made were not necessary. According to Jarvis, the flashing was installed properly.
 {¶ 19} On cross-examination, Jarvis confirmed that no tarps were put on the home on June 21. He explained this was because the roofers used felt paper instead. He further confirmed that he was not at the home when the insulation was removed from the attic. Jarvis testified that Mrs. Stone did not ask him to remove anything other than the insulation that he had his workers remove.
 {¶ 20} Upon review, we find substantial evidence of fraud. Specifically, when viewed in the light most favorable to Storm Kings, the jury could reasonably find that the Stones *Page 9 
represented and continued to represent that they would pay for a new roof, which was material to the transaction, while knowing that they would not pay, with the intent to mislead Storm Kings into relying upon their representation, and that Storm Kings relied on these statements and were injured as a result. Cohen, 10 Ohio St.3d at 169.
 {¶ 21} "Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon [the Stones'] motions." Posin, 45 Ohio St.2d at 275. The jury was free to believe or not believe the testimony of Mrs. Stone, Mr. Stone, and Jarvis. Here, the jury assessed the credibility of the witnesses and apparently believed Jarvis' testimony that there was no water damage to the home. Under the standard of review of a JNOV, the Stones' argument fails. Accordingly, the first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT WRONGLY GRANTED STORM KINGS' ATTORNEY FEES."
 {¶ 22} In their second assignment of error, the Stones argue that the trial court erred in granting Storm Kings attorney fees. We do not agree.
 {¶ 23} The Stones argue that Storm Kings failed to properly prove attorney fees. Initially, we point out that the Stones have not cited this Court to any legal authority or to the record to support their argument that the trial court erred. See App. R. 16(A)(7). As such, we may disregard these arguments. App. R. 12(A)(2). The Stones bear the burden of affirmatively demonstrating the error on appeal, and substantiating their arguments in support. Angle v. Western Reserve Mut.Ins. Co. (Sept. 19, 1998), 9th Dist. No. 2729-M, at *1; Frecska v.Frecska (Oct. 1, 1997), 9th Dist. No. 96CA0086, at *2. See, also, App. R. 16(A)(7). As the Stones' argument fails to comply with the foregoing appellate rule requirements, they have failed to meet their burden on appeal. Accordingly, this portion of the assignment of error is overruled. *Page 10 
 {¶ 24} The Stones further argue that the trial court
 "committed error in failing to adjust the attorney fee award to deduct out the services rendered related to the Stones' Home Solicitation Sales Act violations, in light of the fact that the trial court ruled in favor of the Stones on this claim in the ruling on Stones' Motion for Judgment NOV. * * * Storm Kings should not receive attorney fees for the work done by it's (sic) attorney in defending the Home Solicitation Sales Act claim, because the court found that Storm Kings violated the Home Solicitation Sales Act."
 {¶ 25} However, we note that the trial court awarded attorney fees to Storm Kings prior to the filing of the Stones' JNOV motion. After the trial court granted the JNOV as to the HSSA violation, the Stones did not request the trial court to deduct these attorney fees from Storm Kings' award. We do recognize, however, that the Stones requested attorney fees in their counterclaim on this issue. We will discuss the trial court's failure to grant attorney fees to the Stones in the next assignment of error. As to the Stones' argument that the trial court should have deducted attorney fees from Storm Kings' award, we find that the issue is forfeited. We have repeatedly held that "[a] reviewing court will not consider as error any issue that a party was aware of but failed to bring to the trial court's attention." Kader v. Nixon (Oct. 11, 2000), 9th Dist. No. 99CA007307, at *3, citing Schade v. CarnegieBody Co. (1982), 70 Ohio St.2d 207, 210. Further, "[a] party waives the right to contest an issue on appeal if that issue was in existence prior to or at the time of trial and the party did not raise it at the appropriate time in the court below." Kader, supra, *3, citingStores Realty Co. v. Cleveland (1975), 41 Ohio St.2d 41, 43. Accordingly, we find that the Stones have forfeited this issue on appeal.
 {¶ 26} The Stones' second assignment of error is overruled. *Page 11 
 ASSIGNMENT OF ERROR III "THE TRIAL COURT WRONGLY DENIED STONES' ATTORNEY FEES FOR STORM KING'S VIOLATION OF THE HOME SOLICITATION SALES ACT"
 {¶ 27} In their third assignment of error, the Stones argue that the trial court wrongly denied them attorney's fees for Storm Kings' violation of the Home Solicitation Sales Act. We do not agree.
 {¶ 28} In their JNOV motion, the Stones requested that the trial court grant a JNOV on their counterclaim for violation of the Home Sales Solicitation Act. "The evidence was undisputed that [Storm Kings] failed to orally give the required 3-day cancellation notice, as required by R.C. section 1345.23(D)(2). The evidence was clear that the written 3-day cancellation notice [Storm Kings] gave [the Stones] was defective."
 {¶ 29} The trial court found that
 "the jury could have reasonably determined that Storm Kings substantially complied with the notification requirement contained in [R.C. 1345.23(B)(1)]. However, based on the evidence at trial, Storm Kings did not provide the written notification contained in [R.C. 1345.23(B)(2)]. Although Storm Kings did provide a separate notice of cancellation to the Stones as required under that section, the notice did not contain the precise language required by [R.C. 1345.23(B)(2)]."
 {¶ 30} Finally, the trial court determined that "[b]ecause Storm Kings did not provide the precise notification required under the statute and did not apparently provide the oral notification required under the CSPA, the Court finds that the motion for JNOV as to the violation of the CSPA is well taken."
 {¶ 31} R.C. 1345.23(B)(2) requires that "[a] completed form, in duplicate, captioned `notice of cancellation', shall be attached to the contract signed by the buyer and be easily detachable, and and (sic) shall contain in ten-point, bold-face type, the following information and *Page 12 
statements in the same language as that used in the contract[.]" The statute then lists the required language. The trial court found that Storm Kings did not comply with R.C. 1345.23. Upon review of the documents, we find that the trial court did not abuse its discretion when it determined that Storm Kings failed to comply with the Home Solicitation Sales Act.
 {¶ 32} Next, we note that "the failure to comply with sections 1345.21
to 1345.27 of the Revised Code, the Home Solicitation Sales Act, constitutes a deceptive act or practice in connection with a consumer transaction in violation of R.C. 1345.02." Rusk Industries v.Alexander, 6th Dist. No. L-01-1328, 2002-Ohio-2171, at ¶ 42, citing R.C. 1345.28. As Storm Kings has violated R.C. 1345.23, it has committed a deceptive act or practice. "[W]here a seller has violated any of the provisions of the Home Sales Solicitation Act, the buyer has a cause of action and is entitled to rescind the transaction or recover his damages." Rusk Industries, supra, at ¶ 43, citing R.C. 1345.09(A). Under R.C. 1345.09(F)(2), "[t]he court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed, if * * * [t]he supplier has knowingly committed an act or practice that violates this chapter." (Emphasis added.)
 {¶ 33} "A trial court's determination in regards to an award of attorney fees will not be disturbed on appeal absent an abuse of discretion." Crow v. Fred Martin Motor Co., 9th Dist. No. 21128, 2003-Ohio-1293, at ¶ 38, citing Bittner v. Tri-County Toyota, Inc.
(1991), 58 Ohio St.3d 143, 146.
 "An abuse of discretion involves far more than a difference in * * * opinion * * *. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an `abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." State v. Jenkins (1984), 15 Ohio St.3d 164, 222. *Page 13 
 {¶ 34} The trial court, pursuant to R.C. 1345.09(B), awarded the Stones statutory damages of $200. The Stones do not challenge this award on appeal, but rather, limit their assignment of error to the trial court's failure to award them attorney's fees. The trial court determined that there was no "evidentiary basis for an award of attorney's fees pursuant to [R.C. 1345.09(F)(2)] given that the Stones did not present evidence that Storm Kings knowingly violated the CSPA."
 {¶ 35} On appeal, the Stones point to Charvat v. Ryan,116 Ohio St.3d 394, 2007-Ohio-6833, to support their position that the trial court incorrectly determined that they were not entitled to attorney's fees because they failed to prove that Storm Kings knowingly violated R.C. 1345.23. The Ohio Supreme Court ruled that
 "[t]o establish a knowing violation of R.C. 1345.09, for an award of attorney's fees, a plaintiff need prove only that the defendant acted in a manner that violated the Ohio Consumer Sales Practices Act, R.C. Chapter 1345, and need not prove that the defendant knew that the conduct violated the law." Id. at paragraph three of the syllabus.
 {¶ 36} As such, to support an award of attorney's fees, the Stones were not required to prove that Storm Kings knew its actions violated R.C. 1345.23. However, we again point to R.C. 1345.09(F)(2) which states that "[t]he court may award to the prevailing party a reasonable attorney's fee[.]" (Emphasis added.) "Because the statute does not require an award, we cannot find the trial court abused its discretion in not making an award." McCreery v. Atwood Motors Co., 5th Dist. No. 03AP080061, 2004-Ohio-3328, at ¶ 16. Accordingly, the Stones' third assignment of error is overruled.
 III. {¶ 37} The Stones' assignments of error are overruled. The judgment of the Akron Municipal Court is affirmed. *Page 14 
Judgment affirmed
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellants.
 SLABY, J. WHITMORE, J. CONCUR *Page 1