DECISION AND JOURNAL ENTRY
{¶ 1} Appellants, Fraher Transit, Inc., Fraher Transit PA, Inc., and Fraher Transit Co., Inc. (collectively as "Fraher"), appeal the judgment of the Summit County Court of Common Pleas which granted summary judgment in favor of Appellees, Aldi, Inc., and Aldi, Inc. (Ohio) (collectively as "Aldi"), on Fraher's breach of contract claims, denied Fraher's motion to compel, and directed a verdict against Fraher as to its unjust enrichment claim. This Court affirms.
 I. {¶ 2} On September 13, 2006, Fraher filed a complaint against Aldi. On May 29, 2007, Fraher filed an amended complaint asserting claims for fraud, negligent misrepresentation, unjust enrichment and breach of contract. Originally First Merit Bank, N.A. was included as a defendant in the amended complaint, but was later replaced as a defendant by Pramco CV7, LLC *Page 2 
("Pramco"). Pramco was subsequently dismissed from the action on February 18, 2008, pursuant to a settlement agreement.
 {¶ 3} On October 25, 2006, Aldi filed a motion for judgment on the pleadings, motion to dismiss or motion for definite statement. On October 30, 2006, the trial court converted Aldi's motion into a motion for summary judgment. On April 18, 2007, Fraher filed a motion to compel the production of "the entire Daytimer of Thomas Behtz, Vice President of Aldi, Inc.[,]" and on April 25, 2007, filed a supplement to the aforementioned motion to compel.
 {¶ 4} On June 8, 2007, the trial court granted Aldi's motion for summary judgment as to Fraher's breach of contract claims, but denied the motion as to Fraher's claims for fraud, negligent misrepresentation, and unjust enrichment. On June 19, 2007, the trial court denied Fraher's motion to compel regarding the Daytimer of Thomas Behtz.
 {¶ 5} On February 19, 2008, a jury trial commenced on the remaining causes of action. On February 21, 2008, the trial court directed a verdict in favor of Aldi on Fraher's unjust enrichment claim. On February 26, 2008, the jury returned verdicts in favor of Aldi on both the negligent misrepresentation claim, and the fraud claim. Fraher timely appeals raising three assignments of error.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED BY GRANTING ALDI'S MOTION FOR SUMMARY JUDGMENT ON FRAHER'S BREACH OF CONTRACT CLAIM."
 {¶ 6} Fraher claims that the trial court erred in granting summary judgment in favor of Aldi in regard to Fraher's breach of contract claim. This court disagrees. *Page 3 
 {¶ 7} This Court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-WoodwardCo. (1983), 13 Ohio App.3d 7, 12.
 {¶ 8} Pursuant to Civ. R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 9} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v.Burt (1996), 75 Ohio St.3d 280, 293. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ. R. 56(C), Civ. R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. State ex rel. Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447,449.
 {¶ 10} In the case before this Court, Fraher alleges that the trial court erred in granting summary judgment because the contract in question was mutually abandoned by the parties, and in the event that the agreement was not found to be abandoned, the termination of the contract by Aldi did not "extinguish pre-existing claims for breach of that contract." However, Aldi argues *Page 4 
that the contract was neither abandoned nor breached because it and Fraher effectively modified their previous contract by orally agreeing to alter the terms of their relationship, and subsequently carrying out the terms of the modification.
 {¶ 11} To successfully set forth a breach of contract claim, "a plaintiff must demonstrate by a preponderance of the evidence that (1) a contract existed, (2) the plaintiff fulfilled his obligations, (3) the defendant failed to fulfill his obligations, and (4) damages resulted from this failure." Zeck v. Sokol, 9th Dist. No. 07CA0030-M,2008-Ohio-727, at ¶ 18, quoting Ligman v. Realty One Corp., 9th Dist. No. 23051, 2006-Ohio-5061, at ¶ 5. Furthermore, "for the plaintiff to place the defendant in breach, the plaintiff must tender performance of his obligation and demand performance by the defendant of the reciprocal obligation." Id.
 {¶ 12} "A contract cannot be unilaterally modified. In order to modify a contract, the parties to that contract must mutually consent to the modification." Nagle Heating Air Conditioning Co. v. Heskett (1990),66 Ohio App.3d 547, 550. Furthermore, this Court has recognized that "[t]he general rule is that a written contract may be orally amended if the oral amendment has the essential elements of a binding contract."Mahon-Evans Realty, Inc. v. Gunkelman, 9th Dist. No. 07CA0013-M,2007-Ohio-5108, at ¶ 18. However, "subsequent acts and agreements may modify the terms of a contract, and, unless otherwise specified, neither consideration nor a writing is necessary." Citizens Fed. Bank, F.S.B. v.Brickler (1996), 114 Ohio App.3d 401, 407, quoting Software ClearingHouse, Inc. v. Intrak, Inc. (1990), 66 Ohio App.3d 163, 172. In addition, as recognized by the court in Hanna v. Groom, 10th Dist. No. 07AP-502, 2008-Ohio-765, at ¶ 28, the Supreme Court of Ohio has held that "[a] verbal agreement to be effectual as a waiver, variation, or change in the stipulations of a prior written contract between the parties, must rest upon some new and distinct legal consideration, or must *Page 5 
have been so far executed or acted upon by the parties, that a refusal to carry it out would operate as a fraud upon one of the parties."Thurston v. Ludwig (1856), 6 Ohio St. 1, at syllabus.
 {¶ 13} Furthermore, courts have found:
 "Despite principles of freedom of contract and the potential benefit of avoiding false claims, the no-oral-modification clause has not garnered favor in the law. Indeed, this clause, which purports to erect a kind of `private' statute of frauds for contracting parties, has generally not been given full effect by courts. For, as Judge Cardozo put it long ago, `whenever two men contract, no limitation self-imposed can destroy their power to contract again. * * *' Accordingly, it has been held that the clause itself can be waived by oral agreement like any other term in a contract." (Internal citations omitted.) Fahlgren Swink, Inc. v. Impact Resources, Inc. (Dec. 24, 1992), 10th Dist. No. 92AP-303.
While this rule has been noted as "peculiarly just when applied to building contracts," Frantz v. Van Gunten (1987), 36 Ohio App.3d 96, 99, the principle, as in Fahlgren Swink, has been applied to non-construction situations as well. See, also Pottschmidt v.Klosterman, 169 Ohio App. 3d 824, 2006-Ohio-6964.
 {¶ 14} "Such requirement will be held to have been waived by the parties when alterations have been made with knowledge and participation of all concerned, the evidence of which is clear and convincing, no fraud being shown." Frantz, 36 Ohio App. 3d at 99, quoting 18 Ohio Jurisprudence 3d (1980) 110, 111, Contracts, Section 205. The Supreme Court of Ohio has defined "clear and convincing evidence" as "`that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus." Cleveland Bar Assn. v.Cleary (2001), 93 Ohio St.3d 191, 198. *Page 6 
 {¶ 15} Here, the parties first entered into a written agreement in 1990 which called for Fraher to provide hauling services for Aldi's distribution center in Hinckley, Ohio. In 1993, Fraher began providing hauling services for Aldi's Springfield, Ohio distribution center. On March 24, 1997, Aldi and Fraher signed a subsequent agreement ("1997 Agreement"). The 1997 Agreement specified that "[e]xcept trailers, which shall be supplied by Aldi, [Fraher] shall provide at its expense all properly licensed tractors and drivers, and all supplies, allied equipment and other personnel necessary to perform [Fraher's] obligations under this Agreement in a safe, timely and efficient manner." The 1997 Agreement also specified that it was to run perpetually, but was subject to termination by either party upon thirty days notice in writing to the other party. Furthermore, the 1997 Agreement stipulated that it was only to be modified via "written mutual agreement of the parties[,]" with any changes to be set forth in an addendum to the agreement.
 {¶ 16} In the years subsequent to signing the original 1997 Agreement, the parties signed an unaltered copy of the 1997 Agreement each year through 2002 which was identical to the original, but included varying appendices. The 1997 Agreement contained a provision that called for payment of transporting trailers and for backhauls to be set forth in appendices A and B respectively. These appendices were updated regularly to account for changes in the trucking industry such as inflation, fuel prices, and other various expenses. Although the parties did not sign subsequent unaltered copies of the 1997 Agreement from 2003 — 2006 as they had in previous years, the parties continued to create new appendices until the contract was terminated. In all, Thomas Behtz, the vice president from Aldi who negotiated all of the agreements between Aldi and Fraher, estimated that Fraher and Aldi "amended or updated the Appendices *Page 7 
approximately nine (9) times since the 1997 Agreement was executed." The last update to the appendices was in 2006.
 {¶ 17} In 2003, Aldi offered Fraher the opportunity to provide hauling for an additional distribution center in Webberville, Michigan. However, Aldi informed Fraher that there had been a change in the business model of Aldi and Aldi would be phasing out its trailer fleet. In accordance with the change in Aldi's business model, if Fraher wanted to provide services for the additional distribution center, Fraher would have to provide its own trailers for that center. In addition, Aldi informed Fraher that it would eventually be responsible for providing trailers for all of its hauling for Aldi.
 {¶ 18} While no written agreement was signed by the parties specifying the new terms, Aldi and Fraher negotiated and reached an agreement as to the rate which Aldi was to pay Fraher for providing the trailers. In an affidavit of Fraher's president, Larry Fraher, which was attached to Fraher's response to Aldi's motion for summary judgment, Mr. Fraher conceded that "[w]ith Thomas Behtz's assistance, we were able to estimate an hourly rate for the trailers which at the time I thought would affect a breakeven on my costs for the trailers." The hourly rate agreed to was $3.96 per hour for the Webberville distribution center. In addition, the parties later arranged a similar agreement when Aldi offered Fraher the opportunity to service the Saxonburg, Pennsylvania distribution center, but at the rate of $3.33 per hour of trailer utilization for Aldi's benefit. This agreement applied to the Hinckley distribution center as well. Furthermore, both parties operated under the modified arrangement until the summer of 2006 when Aldi terminated its relationship with Fraher after providing thirty days notice.
 {¶ 19} In the case at hand, Fraher proffers two arguments as to how the trial court erred in entering summary judgment in favor of Aldi. Fraher first argues that the trial court's grant of *Page 8 
summary judgment as to its breach of contract claim was in error because the parties abandoned the contract, and due to this abandonment, the trial court's determination that Aldi properly terminated the 1997 Agreement was incorrect. Fraher also argues that "[e]ven if this Court determines that ALDI did not abandon the Form 1997 Agreement, the termination of the contract in 2006 did not release Fraher's pre-existing claims on the contract[,]" namely, that "ALDI breached the clear and unambiguous terms of ¶ 4 of the Form 1997 Agreement from 2003 to 2006 by requiring Fraher to provide its own trailers." However, the parties did not abandon the 1997 Agreement, but, rather, mutually modified the agreement and adhered to the terms of the agreement as modified.
 {¶ 20} Both parties agreed to the modification of the 1997 Agreement. Fraher was fully apprised of the fact that if it wanted the opportunity to provide service to the Webberville distribution center, that it would have to provide its own trailers. Fraher agreed to the new terms, obtained trailers and was paid a mutually agreed upon hourly rate for use of the trailers for Aldi's benefit. The parties operated under the agreement that Fraher provide trailers for nearly three years. Furthermore, although the 1997 Agreement contained a provision that required all modifications to be in writing, it is clear from the evidence in the record that the modification in question was "made with knowledge and participation of all concerned," and, therefore, was "waived by the parties[.]" Frantz, 36 Ohio App.3d at 99. In addition, because the verbal agreement between Fraher and Aldi was "so far executed or acted upon by the parties, [] a refusal to carry it out would operate as a fraud upon [Aldi]." Thurston, 6 Ohio St. at syllabus. Therefore, the new agreements made between Fraher and Aldi concerning the supplying of trailers was a modification of the parties' 1997 Agreement and Fraher's provision of trailers was *Page 9 
not a breach of the agreement between Fraher and Aldi. Accordingly, Fraher's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING FRAHER'S MOTION TO COMPEL DISCOVERY OF THE COMPLETE DAYTIMERS OF THOMAS BEHTZ."
 {¶ 21} Fraher argues that the trial court abused its discretion in denying its motion to compel Aldi to provide the "Daytimers" of one of its employees, Thomas Behtz, for the five-year time period during which Mr. Behtz was employed with Aldi and worked directly with Fraher. However, because the motion to compel goes to Fraher's claims of fraud against Aldi, and Fraher has not appealed the trial court's disposition of said claims, the issue is moot for the current review. Accordingly, this Court declines to address the merits of this argument.
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED BY DIRECTING A VERDICT FOR ALDI ON FRAHER'S UNJUST ENRICHMENT CLAIM."
 {¶ 22} "An appellate court reviews a trial court's ruling on a motion for a directed verdict de novo, as it presents an appellate court with a question of law." Jarvis v. Stone, 9th Dist. No. 23904, 2008-Ohio-3313, ¶ 7.
 {¶ 23} The standard for granting a directed verdict is well established, and is found in
Civ. R. 50(A)(4) which provides:
 "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
Furthermore, when deciding such a motion, the trial court is not to consider either the weight of the evidence or credibility of witnesses.Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284. *Page 10 
"Instead, `[w]hen a motion for a directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury.'" Cater v. Cleveland (1998),83 Ohio St.3d 24, 33, quoting Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66, 68.
 {¶ 24} "[I]f the party opposing the motion for a directed verdict fails to produce any evidence on one or more of the essential elements of a claim, a directed verdict is appropriate." Knight v. Colazzo, 9th Dist. No. 24110, 2008-Ohio-6613, at ¶ 11, citing Hargrove v. Tanner
(1990), 66 Ohio App.3d 693, 695. However, "if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion [for a directed verdict] must be denied." Hawkins v. Ivy
(1977), 50 Ohio St.2d 114, 115.
 {¶ 25} This Court has recognized:
 "A successful claim of unjust enrichment requires that: (1) a benefit has been conferred by a plaintiff upon a defendant: (2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment. Unjust enrichment occurs when a person has and retains money or benefits which in justice and equity belong to another." (Internal citations and quotations omitted.) Desai v. Franklin, 177 Ohio App.3d 679, 2008-Ohio-3957, at ¶ 14.
 {¶ 26} During trial, after Fraher rested, Aldi moved for a directed verdict as to the remaining claims, including Fraher's claim for unjust enrichment. Ultimately, the trial court found:
 "Again, utilizing the same standard, and my responsibility being to determine whether reasonable minds can differ with respect to the elements of unjust enrichment such that a finding based on those elements could be made in favor of plaintiff, it's the Court's conclusion that reasonable minds cannot differ on that subject, that unjust enrichment is not a proper claim for relief on — based on the evidence in this case, and will not be submitted [to the jury]." *Page 11 
 {¶ 27} In the case at hand, Fraher argues that "[t]he record is clear that Fraher presented sufficient evidence at trial to support its claim for unjust enrichment such that reasonable minds could come to differing conclusions as to whether Aldi was unjustly enriched." Fraher attempts to establish the elements of unjust enrichment by first providing that it conferred a benefit upon Aldi by supplying trailers to Aldi at a rate that was "below Fraher's cost and below Aldi's prior cost[,]" and that Aldi had knowledge of that benefit because "there is no question that Aldi was receiving trailer services at below Fraher's cost and below Aldi's prior cost." In an attempt to establish the third required element of unjust enrichment, Fraher argues that "[t]he record clearly establishes that Aldi retained the benefit even after it was aware that Fraher was losing money on the trailer arrangement." However, Fraher fails to aver that Aldi retained the benefit in question without payment. Rather, Fraher essentially argues that Aldi was unjustly enriched by continuing to use Fraher's services, for which Aldi paid an agreed upon amount, when it became unprofitable for Fraher.
 {¶ 28} To set forth a viable claim for unjust enrichment, Fraher is required to prove that "[Aldi] retained the benefit [in question] under circumstances where it would be unjust to do so without payment."Desai at ¶ 14. In the case before this Court, the president of Fraher admitted that his company had established an agreed upon hourly rate that Aldi was to pay Fraher for the use of Fraher's trailers. At trial, Aldi specified this fact and asked the president of Fraher: "As long as that trailer was on the road on Aldi business, you were getting paid $3.96 an hour, correct?" To which, the president of Fraher answered: "Yes." Also, as mentioned above, the president of Fraher admitted that the hourly rate had been a result of the mutual determination of Fraher and Aldi. *Page 12 
 {¶ 29} The price per hour rate was established in order to cover Fraher's costs incurred from obtaining trailers and was based on the estimation that Fraher would use each of the trailers for Aldi's benefit at least sixty (60) hours per week. At trial, the president of Fraher conceded that had Fraher achieved sixty (60) hours of utilization per week at $3.96 per hour in Webberville that the trailers would have been paid off by the end of the five (5) year lease on the trailers. However, Fraher consistently failed to meet the utilization level needed to cover its costs.
 {¶ 30} Fraher concedes that it was paid $3.96 per hour for each trailer it used for the benefit of Aldi from the Webberville distribution center, and that it received $3.33 per hour for each trailer used for the benefit of Aldi from the Saxonburg and Hinckley distribution centers starting in 2004. However, Fraher fails to provide how Aldi retained the benefit of Fraher's services without compensation. Ultimately, Fraher has failed to show that Aldi "retain[ed] money or benefits which in justice and equity belong to another." Desai at ¶ 14.
 {¶ 31} Fraher failed to establish the third requirement needed for a viable unjust enrichment claim. See id. Therefore, because Fraher "fail[ed] to produce any evidence on one or more of the essential elements of a claim, a directed verdict is appropriate." Knightat ¶ 11. Accordingly, Fraher's third assignment of error is overruled.
 III. {¶ 32} Fraher's first and third assignments of error are overruled. This Court declines to address the merits of Fraher's second assignment of error. The judgment of the Summit County Court of Common Pleas is affirmed.
 Judgment affirmed. *Page 13 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellants.
 MOORE, J. DICKINSON, J. CONCUR. *Page 1