[Cite as *Ludwig v. Lydick*, 2011-Ohio-5164.]

STATE OF OHIO, MONROE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

PHILIP LUDWIG, et al., )
)    CASE NO.  10 MO 9
    PLAINTIFFS-APPELLEES, )
)
VS. )    O P I N I O N
)
DANIEL LYDICK, II, et al., )
)
    DEFENDANTS-APPELLANTS. )


CHARACTER OF PROCEEDINGS:    Civil Appeal from Common Pleas Court, Case No. 2009-165.


JUDGMENT:    Affirmed.


APPEARANCES:
For Plaintiffs-Appellees:    Attorney James Peters
107 West Court Street
Woodsfield, Ohio  43793


For Defendants-Appellants:    Attorney Ric Daniel
1660 NW Professional Plaza, Suite A
Columbus, Ohio  43220


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite


Dated:  September 26, 2011

VUKOVICH, J.

¶{1}   Defendants-appellants Daniel and Aubrey Lydick (the Lydicks) appeal the decision of the Monroe County Common Pleas Court granting judgment in favor of plaintiffs-appellees Philip and Glenn Ludwig (the Ludwigs) in a contractual dispute.

¶{2}   The Lydicks contend that the trial court's decision finding that there was an oral amendment to the parties' written agreement was against the manifest weight of the evidence.   The Ludwigs disagree, stating that there is competent credible evidence to support the trial court's holding that the contract was amended orally to split the land according to the survey.

¶{3}   A review of the record indicates that the trial court's decision was well reasoned, just and supported by some competent credible evidence.   Thus, as it was not against the manifest weight of the evidence, the judgment of the trial court is hereby affirmed.

STATEMENT OF FACTS AND CASE

¶{4}   The Lydicks and the Ludwigs entered into a written agreement for purchase and financing a 300 acre tract of real property in Monroe County (tract of land referred to as the McQueen property).   The McQueen property seller would only sell to the Lydicks, thus, the Lydicks entered into a sales agreement with the seller to purchase the property for $195,000.   The written agreement between the Lydicks and the Ludwigs provided that the Ludwigs would provide the $35,000 down payment to Woodsfield Savings Bank.   At closing the Ludwigs actually paid $39,699.50.   (Tr. 36).   The written agreement between the parties provided that the 300 acre tract of land would be split evenly with each party receiving 150 acres.

¶{5}   Other than stating that each party would receive 150 acres, the written agreement did not describe how the property would be split.   Thus, sometime after the agreement was made and after the property was purchased, the parties had the land surveyed for purposes of dividing it.   The surveyor split the land 173.883 acres for the Ludwigs and 125.18 acres for the Lydicks.   The Lydicks received the land that was abutting their already owned property, which included the barn and wells.

¶{6}   For approximately two years the Ludwigs paid their portion of the mortgage to the Lydicks and the Lydicks remitted that amount plus their portion to the

Woodsfield Savings Bank. However, after that point, the Lydicks began to refuse acceptance of the Ludwigs portion of the mortgage payment.

¶{7} The Ludwigs then sought to invoke paragraph four of the written agreement. That paragraph indicates that if the Ludwigs would make an additional $59,500 payment to Woodsfield Savings Bank, the Lydicks would within 60 days give them a warranty deed to their portion of the property. Thus, the Ludwigs were seeking a deed pursuant to the survey for their purported 173.883 acres. The Lydicks purportedly indicated that they would not produce a deed if the Ludwigs paid that amount.

¶{8} The Ludwigs then filed a complaint against the Lydicks seeking a declaration of parties' rights concerning the written agreement and the alleged "oral modification of the agreement" which split the land pursuant to the survey. The Ludwigs also sought money damages based upon other claims brought against the Lydicks, which are not at issue in this appeal.

¶{9} In response, the Lydicks filed an answer and counterclaim and later filed a third party complaint solely against Glenn Ludwig. The Ludwigs filed an answer to the counterclaim. In response to the third party complaint, Glenn Ludwig filed an answer and a motion to dismiss. Thereafter, the Ludwigs filed a motion for partial summary judgment on the counterclaim and the third party complaint, which was granted in its entirety.

¶{10} The matter then proceeded to trial solely on the Ludwigs' complaint. Testimony was taken from all parties. Following trial, the trial court found that when the survey was being done the parties agreed to the manner in which the surveyor split the McQueen property. Thus, the parties were bound by the survey and the Ludwigs were entitled to specific performance. However, the trial court found that in order to receive a deed for their 173.883 acres they were required to pay the $59,500 called for in the written contract plus $3,519.22 for the additional acreage. As the court explained:

¶{11} "The Court finds that Ludwigs' surveyed portion of the McQueen property of approximately 174 acres, at $650.00 per acres, amounts to $113,100.00. Therefore, the Court hereby Orders Ludwigs to deposit the sum of $63,019.22 (payable to

Woodsfield Savings Bank) with the Clerk of Courts within thirty (30) days. This figure represents $113,100.00 for their surveyed portion of the McQueen property, less the amount previously paid at closing of $39,699.50, less the amount of payments already made ($399.28 x 26 months) of $10,381.28, leaving a balance of $59,500.00 called for in the contract¸ and $3,519.22 for the approximate remaining acreage." 09/23/10 J.E.

¶{12} The Lydicks appeal the trial court's decision that there was an oral amendment to the contract between the parties.

ASSIGNMENT OF ERROR

¶{13} "THE LOWER COURT COMMITTED ERROR IN AWARDING APPELLEES 174 ACRES CONTRARY TO THE TERMS OF THE AGREEMENT."

¶{14} This case deals with an alleged oral amendment to a contract. In Ohio, it is well settled that a party asserting the oral modification of, or addition to, a written contract must establish that charge by clear and convincing evidence. *Russell v. Daniels-Head & Associates, Inc.* (June 30, 1987), 4th Dist. No. 1600, citing *Ashley v. Henahan* (1897), 56 Ohio St. 559, paragraph five of the syllabus and *Olinger v. McGuffey* (1896), 55 Ohio St. 661. The Supreme Court of Ohio has defined "clear and convincing evidence" as "'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' *Cross v. Ledford* (1954), 161 Ohio St. 469, paragraph three of the syllabus." *Cleveland Bar Assn. v. Cleary* (2001), 93 Ohio St.3d 191, 198.

¶{15} The Lydicks position is that the evidence did not clearly and convincingly establish that there was an oral modification to the written contract. This argument is an assertion that the trial court's decision was against the manifest weight of the evidence.

¶{16} Appellate review of a manifest weight of the evidence argument in a civil case is much more deferential to the trial court than in a criminal case. *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, ¶26. The civil manifest weight of the evidence standard provides that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a

reviewing court as being against the manifest weight of the evidence. Id. at ¶24, citing *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, syllabus.

**¶{17}** The reviewing court is obliged to presume that the findings of the trier of fact are correct. Id*.,* citing *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80-81. This presumption arises in part because the fact-finder occupies the best position to observe the witnesses' demeanor, gestures, and voice inflections and to utilize these observations in weighing credibility. Id*.,* citing *Seasons Coal,* supra at 80.

**¶{18}** This civil manifest weight standard of review applies to civil judgments requiring clear and convincing evidence. *State v. Baird*, 7th Dist. No. 07CO25, 2008-Ohio-3328, ¶31.

**¶{19}** The written contract at issue in this case does not contain a prohibition against oral modification. Thus, according to Ohio law oral modification is permitted. *Kelley v. Ferraro*, 188 Ohio App. 3d 734, 744, 2010-Ohio-2771, ¶39 citing *Freeman-McCown v. Cuyahoga Metro. Hous. Auth.* (Oct. 26, 2000), 8th Dist. Nos. 77182 and 77380; *Rosepark Properties, Ltd. v. Buess,* 167 Ohio App.3d 366, 2006-Ohio-3109, ¶38; *Chiaverini, Inc. v. Jacobs,* 6th Dist. No. L-06-1360, 2007-Ohio-2394, ¶24; *Fultz & Thatcher v. Burrows Group Corp.,* 12th Dist. No. CA2005-11-126, 2006-Ohio-7041, at ¶17. That said, a contract cannot be unilaterally modified; the parties must mutually consent to the modification. *Fraher Transit, Inc. v. Aldi, Inc.*, 9th Dist. No. 24133, 2009-Ohio-336, ¶12; *Nagle Heating & Air Conditioning Co. v. Heskett* (1990), 66 Ohio App.3d 547, 550.

**¶{20}** In the case at hand, the written contract indicated that the parties would split the 300 acres equally with each party receiving 150 acres was admitted at trial. However, as aforementioned, that contract does not provide how the property would be split, i.e. it did not state that the property would be split north/south, east/west, diagonally, or by any other configuration.

**¶{21}** Glenn Ludwig testified that originally the parties orally agreed to split the property north and south down the middle. (Trial Tr. 19). He explained that Daniel Lydick did not want it split that way because the Lydicks would not be receiving all of the property that abutted the property they already owned. (Trial Tr. 19-20). Daniel Lydick wanted the property that was close to his property and he wanted the barn and

the gas and oil wells. (Trial Tr. 19). Glenn Ludwig claimed that he and Daniel Lydick met with Mr. Hunnell, the surveyor, and agreed to split the property in a manner done by the survey which was 173.883 acres to the Ludwigs and 125.18 acres to the Lydicks. (Trial Tr. 20).

¶{22} Daniel Lydick initially testified that he did not agree to split the land according to the survey. (Tr. 9). However, upon further questioning, he agreed that during his deposition testimony he stated that he orally agreed "to an extent" that the survey showed how the property would be divided. (Trial Tr. 10-11). His testimony concerning the survey and the splitting of the land is as follows:

¶{23} "Q. [Direct Examination]: All right. Now, you heard some testimony earlier that you changed the terms or tenor of this agreement and went from a hundred and fifty to a hundred and seventy that the plaintiff [the Ludwigs] was supposed to receive.

¶{24} "Do you remember that?

¶{25} "A. Yes. They – the survey was going to split the property this way [Indicating].

¶{26} "Q. Length wise?

¶{27} "A. Length. That served me and my family no purpose that way.

¶{28} "I mean, before we even talked about it, I talked with Glenn [Ludwig] several times about how the property was going to be split equally.

¶{29} "And I'll never forget, they said during the conversation with Hunnell, that by putting the line where he wanted to put it, may be the difference of six or seven acres. It made a difference of almost twenty-five acres.

¶{30} "And I asked him you know, what makes him feel that he needs a hundred seventy-four acres of the property that I did a deal on, and he pointed to the map and he said because you own this up here [Indicating].

¶{31} "* * *

¶{32} "Q. All right. So was there ever an understanding between you and plaintiffs [the Ludwigs] that you would in fact convey to them a hundred and seventy some acres as opposed to a hundred and fifty?

¶{33} "A.   We didn't know what the amount of acreage was going to be, because the survey wasn't back or wasn't compete.

¶{34} "We didn't know.

¶{35} "* * *

¶{36} "Q. [Cross-examination]:  Let's get back to this split of the property.  You kind of indicated in response to some of Mr. Daniel's questions that you agreed to a split but you didn't really know how many acres it was going to be one way or the other.

¶{37} "Is that correct?

¶{38} "A.  That's correct.

¶{39} "Q.  And so you did agree to a split with Hunnell and Mr. Ludwig, is that right?

¶{40} "A.  To an extent, yes.

¶{41} "Q.  And –

¶{42} "A.  Not seeing what it is or not knowing, I guess you could say that.

¶{43} "Q.  And the first time you voiced your dissatisfaction with that split was when the final survey came back and you discovered that the variance in acreage was more than you thought it was going to be?

¶{44} "A.  Not necessarily my – when my red flag went up was when I asked him why we're splitting it this way, and he told me because I own this property up here [Indicating].

¶{45} "Meaning that I own eighty-three acres besides this, it was like that I was going to have more ground than them or something down there and they was trying to acquire more ground in that way.

¶{46} "When I asked him why, that was the only answer that he could give, is because I own this here [Indicating]."  (Trial Tr. 103-104, 111-112).

¶{47} Likewise, portions of his deposition testimony were discussed at trial.  In his deposition he agreed that the survey showed that the property would be divided 177 acres to the Ludwigs and 125 acres to him.  (Tr. 10;  Depo. Tr. 11-12, 13-14).  He stated he agreed that the property would be divided that way to a certain extent.  (Tr. 10-11, Dep. Tr. 11-12, 13-14).

¶{48} Considering all of the testimony, the trial court had a reasonable basis to believe Glenn Ludwig's testimony over Daniel Lydick's testimony. The trial court is in the best position to determine which witness was more believable, especially considering Daniel Lydick's position that he agreed to the split according to the survey, but only to a "certain extent." Considering all of the evidence, Glenn Ludwig's testimony provided some competent credible evidence that the contract was orally modified and that there was an agreement to split the property pursuant to the survey. Therefore, considering our deferential standard of review, the trial court's well reasoned opinion, and all of the evidence, we cannot find that the trial court's decision was against the manifest weight of the evidence. This assignment of error is meritless.

¶{49} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
Waite, P.J., concurs.