[Cite as *Amore v. Ohio Turnpike Comm.*, 194 Ohio App.3d 182, 2011-Ohio-1903.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

AMORE et al.,

    Appellees,

    v.

THE OHIO TURNPIKE COMMISSION,

    Appellant.

C.A. No.     25227

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 06 12 8215

APPEARANCES:

Michael A. Malyik and Scott Kolligian, for appellees.

Anthony J. Coyne, Bruce G. Rinker, and Jennifer E. Horn; and Noelle Tsevdos, General Counsel, for appellant.

R. Todd Hunt and Charles T. Riehl, for amici curiae.

DECISION AND JOURNAL ENTRY

Dated: April 20, 2011

MOORE, Judge.

{¶1} Appellant, the Ohio Turnpike Commission, appeals the judgment of the Summit County Court of Common Pleas, General Division. This court affirms.

I

{¶2} In 1984, Christopher and Patricia Amore purchased the property located at 1600 Woodland Drive in Peninsula, Ohio. In 1997, the Ohio Turnpike Commission began a maintenance and construction project involving a portion of the turnpike adjacent to the Amores'

property. The construction increased the number of travel lanes eastbound and westbound. This involved removing several trees that stood between the Amores' home and the turnpike. It also brought the travel lane approximately 65 feet closer to their home. A steep hill was constructed next to the Amore residence in order to build the additional lanes. As a result of the project, there was an increase in traffic noise from the turnpike, and the Amores complained that they lost the enjoyment and use of their home.

{¶3}    The Amores filed a complaint on January 4, 2007, alleging that maintenance and improvements to the Ohio Turnpike, created entirely within the right of way of the commission, created a permanent nuisance. The Amores also alleged that the maintenance and improvements of the turnpike constituted an illegal taking of their property without compensation. In an amended complaint, the Amores included a count for mandamus and taking. The commission moved for summary judgment on October 12, 2007, which the trial court denied on July 17, 2008. The action proceeded to a jury trial, which began on June 15, 2009.

{¶4}    On the first day of trial, the Amores abandoned their mandamus claim. Several days later, they attempted to orally dismiss their takings claim. The court denied the attempted dismissal. The commission orally moved for a directed verdict at the close of the Amores' evidence, and renewed its motion for a directed verdict at the close of trial. The court denied both motions. The jury then retired to deliberate on both the takings claim and the nuisance claim. It reached a jury verdict of $115,000 for the Amores on the takings claim and $115,000 for the Amores on the nuisance claim. The court filed a judgment entry in the amount of $115,000 for the Amores. After trial, the commission filed motions for judgment notwithstanding the verdict and for a new trial. The court denied these motions.

{¶5} The commission appealed to this court, and we remanded the case to the trial court because the judgment entry did not resolve all issues. Upon resolution of the issues, the trial court filed another judgment entry and thereafter denied refiled motions for judgment notwithstanding the verdict and for a new trial.

{¶6} The commission timely filed a notice of appeal. It raises six assignments of error for our review. We have rearranged and consolidated some of the assignments of error to facilitate our review.

II

**Assignment of Error III**

The trial court erred when it allowed [the Amores'] nuisance claim
to go to the jury because it was substantively deficient.

{¶7} The commission contends that the trial court erred when it allowed the Amores' nuisance claim to go to the jury, because it was substantively deficient. Essentially, it argues that the trial court erred when it denied the commission's motion for directed verdict. We do not agree.

{¶8} As an appellate court, we review the trial court's ruling on a motion for a directed verdict de novo to the extent that it presents a question of law. *Jarvis v. Stone*, 9th Dist. No. 23904, 2008-Ohio-3313, at ¶ 7. The focus of a motion for a directed verdict is on the sufficiency of the evidence as opposed to the weight of the evidence or the credibility of witnesses. Id.

{¶9} After a court enters judgment on a jury's verdict, a party may file a motion for judgment notwithstanding the verdict in order to have the judgment set aside on grounds other than the weight of the evidence. Civ.R. 50(B). As with an appeal from a court's ruling on a directed verdict, this court reviews a trial court's grant or denial of a judgment notwithstanding the verdict de novo. *Williams v. Spitzer Auto World Amherst, Inc.*, 9th Dist. No. 07CA009098,

2008-Ohio-1467, at ¶ 9, citing *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 347. "[A judgment notwithstanding the verdict] is proper if upon viewing the evidence in a light most favorable to the nonmoving party and presuming any doubt to favor the nonmoving party reasonable minds could come to but one conclusion, that being in favor of the moving party." *Williams* at ¶ 9, citing Civ.R. 50(B)

{¶10} "'Nuisance' is a term used to designate the wrongful invasion of a legal right or interest. It comprehends not only the wrongful invasion of the use and enjoyment of property, but also the wrongful invasion of personal legal rights and privileges generally." *Taylor v. Cincinnati* (1944), 143 Ohio St. 426, 431-432.

{¶11} A nuisance can be private or public. A private nuisance is "a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Ogle v. Ohio Power Co.*, 180 Ohio App.3d 44, 2008-Ohio-7042, at ¶ 7, citing *Brown v. Scioto Cty. Commrs.* (1993), 87 Ohio App.3d 704, 712. For a private nuisance to be actionable, the invasion must be either (1) intentional and unreasonable or (2) unintentional but caused by negligent, reckless, or abnormally dangerous conduct. *Brown* at 712-713.

{¶12} A private nuisance can be either qualified or absolute. Strict liability is imposed on an absolute nuisance. *Kramer v. Angel's Path, L.L.C.*, 174 Ohio App.3d 359, 2007-Ohio-7099, at ¶ 20, citing *Taylor*, 143 Ohio St. 426, at paragraph two of the syllabus. The Ohio Supreme Court has explained that an absolute nuisance "consists of either a culpable and intentional act resulting in harm, or an act involving culpable and unlawful conduct causing unintentional harm." *Metzger v. Pennsylvania, Ohio & Detroit RR. Co.* (1946), 146 Ohio St. 406, paragraph one of the syllabus.

> [T]he distinction between absolute and qualified nuisance depends upon the conduct of the defendant. * * * [A]n absolute nuisance requires

> intentional conduct on the part of the defendant[.] * * * Intentional, in this context, means not that a wrong or the existence of a nuisance was intended but that the creator of [it] intended to bring about the conditions which are in fact found to be a nuisance.

*Angerman v. Burick*, 9th Dist. No. 02CA0028, 2003-Ohio-1469, at ¶ 10.

{¶13} In 1984, the Amores bought the home at 1600 Woodland Drive for $51,000. Mrs. Amore testified that the couple purchased the home in 1984 when there was significant vegetation that blocked the majority of the view and noise from the turnpike. Plaintiff's Exhibit 1 was a picture of the back of the home around 1986 to 1987. The significant and hearty vegetation can be seen, and the turnpike is not visible through the trees. Plaintiff's Exhibit 2 was a picture taken from the same vantage point after construction was completed. It shows much less vegetation, the turnpike guardrail is visible, as well as a truck passing on the turnpike.

{¶14} Mrs. Amore further testified about the family's enjoyment of the property prior to the construction. The Amores enjoyed a garden and a strawberry patch. They would often have family picnics and spend significant amounts of time outside with family, friends, and pets. The traffic noise from the turnpike was not an issue prior to construction. She explained that when she purchased the home she did not have any concerns about the turnpike because it was not visible and there was minimal sound, only a periodic "swish." Between 1995 and 1996, the Amores made extensive improvements to the property, investing about $120,000. They had planned to stay there for retirement and for the rest of their lives.

{¶15} The Amores received a letter around 1997 from the Turnpike Commission informing them of meetings that would take place to advise residents of the upcoming construction project. Prior to construction beginning, Mr. Amore attended two community meetings with commission representatives. At one meeting, a gentleman from the commission indicated to Mr. Amore, referring to his property that, "we intend to purchase that property. We

need that for the construction of the new lanes." The commission told Mr. Amore that he would be contacted, but that never occurred. Later, the Amores were told that their property would not be needed and that there would be an embankment built with attractive vegetation between the turnpike and their property.

{¶16} At some point, the Amores contacted the commission to inquire about the noise levels that would result from construction. Plaintiff's Exhibit 5 was a letter from the commission, dated May 26, 1998, with the subject line "Cuyahoga River Bridge Replacement – Noise levels." Mrs. Amore testified that this letter was in response to the Amores' concern about the noise level from the construction. In it, the commission explained that the projected change in noise levels would be four to five decibels. Because a human ear can barely distinguish a three-decibel change, the commission projected that the change would be noticeable but not significant. Therefore, the commission concluded that it would not provide noise abatement, such as a sound wall.

{¶17} When construction began, many trees located between the Amores' property and the turnpike, including those shown in Plaintiff's Exhibit 1, were cut down. These trees were not on property belonging to the Amores. The majority of the remaining trees that were located on the Amores' property subsequently died following construction. Construction was completed in October 2003. It included the addition of two lanes, increasing the total number from four to six lanes. It also moved the lanes 65 feet closer to the Amores' property. The speed limit, after the project was completed, was increased from 55 miles per hour to 65 miles per hour.

{¶18} William Fleischman, assistant chief engineer for the commission, testified about the construction project. A steep hill, referred to as a "barrow," was constructed next to the

Amore residence. The hill was necessary to build the additional lanes. The Amores testified that this hill has created an increase in noise due to engine-braking by semi trucks.

{¶19} Mrs. Amore explained that following completion of the construction project, it is difficult to sit outside and hold a conversation. If there is additional noise from truck engine-braking, the conversation has to be put on hold until the truck passes. In addition, Mrs. Amore no longer keeps a garden because she does not enjoy spending as much time outside. The Amores no longer keep their windows open due to the increased noise level. Mr. Amore similarly testified that you can "hardly talk to each other unless you are right on top of each other." He further testified that he awoke at night because of the noise from trucks and the engine-braking.

{¶20} Mrs. Amore testified to the property value of her home. In 2004, the tax appraisal stated that the property had a total value of $189,170. In 2005, following the addition of a $50,000 pool, the property was valued at $264,300. The Amores requested an adjusted appraisal, and it was adjusted to $211,020. In 2007, after the addition of a pole barn, the property was appraised at $215,800. In 2008, there was a proposed increase to $227,940. The Amores contested again due to the previous adjustment and because of the proximity to the turnpike. The property was then given an appraisal of $198,420. Mrs. Amore testified, as a homeowner, that with the addition of the pool she believes the home would have been worth $300,000. However, following the construction, she testified that she would "be surprised if [they] could sell it for $200,000."

{¶21} Kimberly Burton testified as a sound expert for the commission. She explained that 70 decibels would be a number that would prompt looking at installing a sound barrier wall. She further explained that the human ear would perceive an increase of 10 decibels as a doubling

in sound. When she conducted testing at the Amores' property after construction, and prior to the lawsuit, she had a reading of 80.2 decibels. She agreed that it was noisy and would annoy people. Another reading registered at 74.2 decibels. There was a maximum reading near the house of 83.1 decibels. She agreed that it was "a little too noisy."

{¶22} There is no doubt that the commission intentionally carried out the construction project adjacent to the Amores' property. The testimony above indicates that there was an increase in the noise level. The commission's letter acknowledges that it anticipated an increase in the noise level. In addition, the jury had the opportunity to view the property and to observe the noise level firsthand. "Even if they did not intend to generate noise, it apparently was an unavoidable byproduct of their intentional activity." *Angerman*, 2003-Ohio-1469, at ¶ 11. In *Angerman*, this court was "persuaded by Ohio appellate opinions that have analyzed the problem of intentionally created excessive noise as an absolute nuisance." Id. at ¶ 15, citing *Zang v. Engle* (Sept. 19, 2000), 10th Dist. No. 00AP-290; *Coe v. Pennington* (Apr. 6, 1983), 12th Dist. No. 470. "'[I]f one does any other act, in itself lawful, which yet be done in that place necessarily tends to the damage of another's property, it is a nuisance: for it is incumbent on him to find some other place to do that act, where it will be less offensive.' " *Angerman* at ¶ 10, quoting 3 Blackstone, Commentaries on the Laws of England (1768) 217-218.

{¶23} This court concludes, after viewing the evidence in a light most favorable to the Amores, that the evidence of record was sufficient to support the claim of nuisance, and that denial of the judgment notwithstanding the verdict was proper. *Williams*, 2008-Ohio-1467, at ¶ 9, citing Civ.R. 50(B). The commission's third assignment of error is overruled.

### Assignment of Error IV

The trial court erred by permitting Patricia Amore to testify as to the value of her home, because it was based upon inadmissible hearsay.

{¶24} The commission contends that the trial court erred when it permitted Patricia Amore to testify as to the value of her home, because it was based upon inadmissible hearsay. We do not agree.

{¶25} The owner-opinion rule in Ohio is expressed in *Cincinnati v. Banks*, (2001), 143 Ohio App.3d 272, 291. It provides that the owner of real property is competent to testify as to its fair market value based upon his ownership of the property alone, without regard to any particular expertise in the area. Id. The basis of the rule is that the homeowner is presumed to be well enough acquainted with his or her own property to estimate its value without any expert training. Id.

{¶26} The commission contends that the Amores never established a before or after valuation of the property because they never presented an expert opinion. In *Banks*, the court held that one does not need to be qualified as an expert to testify as to the value of his own property. Thus, the commission's fourth assignment of error is overruled.

### Assignment of Error I

> The trial court erred when it allowed [the Amores'] takings claim to go to the jury, both because the claim was deficient, as a matter of procedure, and because the jury was the improper body to decide the claim, as a matter of law.

### Assignment of Error II

> The trial court erred when it allowed [the Amores'] takings claim to go to the jury because the takings claim was also substantively deficient.

{¶27} The commission contends that the trial court erred when it allowed the Amores' takings claim to go to the jury because the jury was an improper body to decide the claim and because the claim was substantively deficient. Based upon our disposition of the commission's third assignment of error, we decline to address these assignments of error.

{¶28} The jury returned a verdict of $115,000 for the Amores on the takings claim and $115,000 for the Amores on the nuisance claim. The court found that these awards were not cumulative because the jury provided identical relief under two different theories of law. The court entered a judgment in the amount of $115,000 for the Amores. Assuming for the purposes of argument that the takings claim was deficient, the judgment for $115,000 would nonetheless be upheld based upon the jury's verdict on the nuisance claim.

{¶29} This court has previously stated that "[w]e are nevertheless required to affirm the trial court's judgment if any valid grounds are found on appeal to support it." *McKay v. Cutlip* (1992), 80 Ohio App.3d 487, 491, citing *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96. In addition, " '[r]eviewing courts are not authorized to reverse a correct judgment on the basis that some or all of the lower court's reasons are erroneous.'" *Goudlock v. Voorhies*, 119 Ohio St.3d 398, 2008-Ohio-4787, at ¶ 12, quoting *State ex rel. McGrath v. Ohio Adult Parole Auth.*, 100 Ohio St.3d 72, 2003-Ohio-5062, at ¶ 8.

{¶30} Here, our disposition of the third assignment of error concludes that there are valid grounds to support the trial court's judgment entry in favor of the Amores. Thus, we decline to address the commission's first and second assignments of error.

### Assignment of Error V

The trial court erred when it denied [the commission's] motion for summary judgment because there were no genuine issues of material fact.

{¶31} The commission contends that the trial court erred when it denied the commission's motion for summary judgment. We do not agree.

{¶32} The Ohio Supreme Court has held that an error by the trial court in denying a motion for summary judgment is rendered harmless if a later trial on the merits involving the same issues demonstrates that there were genuine issues of material fact and results in a

judgment in favor of the party against whom the motion was made. *Continental Ins. Co. v. Whittington* (1994), 71 Ohio St.3d 150, 156.

{¶33} The Supreme Court added:

> "We need not evaluate the evidentiary materials supporting and opposing the [party's] summary judgment motion on [the] issue. Any error in denying that motion is moot or harmless, even if it had merit when the court denied it. * * *." We are also persuaded by the fact that courts throughout this country generally hold that the denial of a motion for summary judgment is not a point of consideration in an appeal from a final judgment entered following a trial on the merits. See, generally, Annotation, Reviewability of Order Denying Motion for Summary Judgment (1967), 15 A.L.R.3d 899, 922-925, and 1994 Supplement at 72-76.

Id., quoting *Sanders v. Mt. Sinai Hosp.* (1985), 21 Ohio App.3d 249, 256, 21 OBR 292, 487 N.E.2d 588. See also *Bies v. Huntington Natl. Bank*, 9th Dist. No. 22660, 2005-Ohio-6981, at ¶ 11.

{¶34} "This Court, without determining whether the trial court committed any error in denying appellant's motion for summary judgment, need only determine whether genuine issues of fact were raised at trial." *First Merit Bank, N.A. v. Wilson*, 9th Dist. No. 23363, 2007-Ohio-3239, at ¶ 24. We conclude that there were.

{¶35} This court determined in the commission's third assignment of error that the trial court properly found in favor of the Amores. Accordingly, any error in denying the commission's motion for summary judgment was harmless. The commission's fifth assignment of error is therefore overruled.

**Assignment of Error VI**

> The trial court erred when it denied [the commission's] motion for directed verdict despite the absence of evidence proving the Amores' claims.

{¶36} The commission contends that the trial court erred when it denied the commission's motion for directed verdict. Our disposition of the commission's first, second, and

third assignments of error renders this assignment of error moot.   App.R.  12(A)(1)(c). Consequently, we decline to address the commission's sixth assignment of error.


III

**{¶37}**  The commission's third, fourth, and fifth assignments of error are overruled.  We decline to address the first, second, and sixth assignments of error.  The judgment of the Summit County Court of Common Pleas, General Division, is affirmed.

Judgment affirmed.

WHITMORE, P. J., and DICKINSON, J., concur.


APPEARANCES:

Michael A. Malyik, and Scott Kolligian, for appellees.

Anthony J. Coyne, Bruce G. Rinker, and Jennifer E. Horn; and Noelle Tsevdos, General Counsel, for appellant.

R. Todd Hunt and Charles T. Riehl, for amici curiae.