[Cite as *Diplomate Health Care, L.L.C. v. Coury*, 2011-Ohio-2767.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

DIPLOMATE HEALTH CARE, LLC, et al.

    Appellants/Cross-Appellees

    v.

JOHN P. COURY, et al.

    Appellees/Cross-Appellants

C.A. No.      25181

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2008 03 2374

DECISION AND JOURNAL ENTRY

Dated: June 8, 2011

BELFANCE, Judge.

{¶1} Appellants/Cross-Appellees Stephen Krutowsky and Thomas Bartlebaugh appeal judgments of the Summit County Court of Common Pleas. Appellees/Cross-Appellants John Coury, Jr. ("Mr. Coury") and J & R Health Associates, Inc. dba Sovereign Healthcare ("Sovereign") have cross-appealed. For the reasons set forth below, we affirm.

I.

{¶2} As an entire recitation of the facts is unnecessary to resolve the merits of the appeal, this Court will focus on those facts necessary to understand the issues raised on appeal; thus, this Court acknowledges that numerous facts and allegations have been omitted in order to facilitate the understanding of the issues at hand.

{¶3} Mr. Coury and his ex-wife Kim Coury currently each own 50% of Sovereign, a company that operates nursing homes. At the time of the contracts at issue, Ms. Coury owned

100% of Sovereign and Mr. Coury was employed by it. Mr. Krutowsky and Mr. Bartlebaugh own or have ownership interests in nursing homes.

{¶4} In 2007, Sovereign was operating Traditions Care Center, LLC ("Traditions") and Covenant Care Center, LLC ("Covenant") nursing homes pursuant to a lease. In the fall of 2007, Mr. Coury was involved in discussions concerning Sovereign's continued management of the nursing homes. A draft agreement providing for Sovereign's operation of the two facilities was drawn up, but was never executed.

{¶5} Also in the fall of 2007, Mr. Coury became aware that the Patrician, a nursing home then owned by the Gaitanaros family, was possibly going to be for sale. Mr. Coury had his lawyer, Thomas Hess, investigate the matter, and ultimately had Mr. Hess draft a confidentiality agreement so that Mr. Coury could review the Patrician's financial information. Mr. Coury did not believe that he could get the financing necessary to purchase the facility himself, due to a prior conviction for bank fraud, so he began looking for someone who would be able to partner with him and supply the funds to purchase the Patrician.

{¶6} Ultimately, Mr. Coury, and his accountant, Charles Calabrase, met with Mr. Krutowsky and Mr. Bartlebaugh to discuss a deal involving the Patrician. Following the meeting two entities were formed: Diplomate Healthcare, LLC ("Diplomate Healthcare"), the entity that would operate the Patrician, and Diplomate Land Holdings, LLC ("Diplomate Land"), the entity that would own the real estate. Initially, Mr. Krutowsky and Mr. Bartlebaugh were the only owners of the Diplomate entities.

{¶7} According to Mr. Coury the parties reached an oral agreement at the meeting. At the meeting it was agreed that Mr. Krutowsky and Mr. Bartlebaugh would purchase the Patrician. According to Mr. Coury, they also agreed that after the sale closed, Mr. Coury would

receive a 33% interest in Diplomate Healthcare and a 10% interest in Diplomate Land. Mr. Coury also understood that Sovereign would operate the Patrician after closing. As Mr. Coury would have ownership interests in the operating and real estate companies, and because Sovereign would be operating the Patrician after closing, Mr. Krutowsky told Mr. Coury that Sovereign should forego the opportunity to continue operating Traditions and Covenant. Mr. Krutowsky and Mr. Bartlebaugh dispute this and claim that the meeting was preliminary and that it was only agreed that Mr. Coury might have the opportunity to purchase an interest in the entities after closing if everything went well prior to closing.

{¶8} In November 2007, Diplomate Land entered into an asset purchase agreement to purchase the Patrician. The closing was scheduled for no later than February 15, 2008. Also in November, Diplomate Healthcare entered into an agreement whereby it would pay monthly fees to operate the Patrician beginning November 15, 2007. Mr. Krutowsky and Mr. Bartlebaugh characterized this time period before closing as a due diligence period. Mr. Krutowsky and Mr. Bartlebaugh then entered into an oral agreement for Sovereign to operate the Patrician during the due diligence period. Diplomate Healthcare obtained a $900,000 line of credit to fund the operations of the Patrician during the due diligence period.

{¶9} Diplomate Land was able to obtain financing and the deal closed as scheduled on February 15, 2008. However, a few days later, Mr. Krutowsky and Mr. Bartlebaugh told Mr. Coury that Sovereign would not be managing the Patrician. Further, Mr. Coury never received any interest in either of the Diplomate entities. Instead, Mr. Krutowsky and Mr. Bartlebaugh entered into an agreement with the principals of Saber Healthcare, which would receive a substantial ownership interest in Diplomate Healthcare. Saber Healthcare would then lease the Patrician from Diplomate Land and operate it.

{¶10} Diplomate Healthcare filed a complaint in March 2008 against Mr. Coury and Sovereign for breach of contract concerning Mr. Coury's/Sovereign's management of the Patrician during the due diligence period, unjust enrichment, fraudulent misrepresentation and misappropriation of funds, negligence, and for an accounting. Sovereign and Mr. Coury answered and asserted counterclaims for breach of contract and unjust enrichment against Diplomate Healthcare, Mr. Krutowsky, and Mr. Bartlebaugh. Sovereign and Mr. Coury also asserted counterclaims against Mr. Krutowsky and Mr. Bartlebaugh for promissory estoppel and fraud/intentional misrepresentation. Subsequently, Diplomate Healthcare amended its complaint and added Sovereign Service Provider, LLC as a defendant.

{¶11} Diplomate Healthcare moved for summary judgment on its claims and Diplomate, Mr. Krutowsky and Mr. Bartlebaugh moved for summary judgment on the counterclaims, based in part on the statute of frauds. The motions for summary judgment were denied. The matter proceeded to a jury trial. At the conclusion of Diplomate Healthcare's case, the trial court granted directed verdicts in favor of Mr. Coury and Sovereign on all counts of Diplomate Healthcare's complaint except for its breach of contract claim. At the conclusion of Mr. Coury's and Sovereign's case, the trial court granted directed verdicts in favor of Diplomate Healthcare, Mr. Krutowsky, and Mr. Bartlebaugh on Mr. Coury's and Sovereign's counterclaims for unjust enrichment and fraud/intentional misrepresentation. Thus, the jury was left to consider Diplomate's breach of contract claim, Mr. Coury's breach of contract counterclaim, and Sovereign's promissory estoppel counterclaim. The jury returned a verdict in favor of Mr. Coury on his breach of contract counterclaim and Sovereign on its promissory estoppel counterclaim. In addition, it found in favor of Sovereign and Mr. Coury on Diplomate Healthcare's breach of contract claim. Specifically, the jury found that (1) Mr. Coury and Sovereign did not breach the

oral contract to manage the Patrician during the due diligence period, (2) that Mr. Krutowsky and Mr. Bartlebaugh entered into an oral contract entitling Mr. Coury to an interest in the Diplomate entities, and (3) that Mr. Krutowsky and Mr. Bartlebaugh were estopped from denying an oral contract with Sovereign based upon promissory estoppel. The jury awarded Sovereign $363,494.00 for its promissory estoppel counterclaim and Mr. Coury $1,892,241.00 for his breach of contract counterclaim. Diplomate Healthcare, Mr. Krutowsky, and Mr. Bartlebaugh filed post-trial a motion for judgment notwithstanding the verdict and in the alternative, motions for new trial, mistrial, and remitter. The trial court denied the motions. Mr. Krutowsky and Mr. Bartlebaugh have appealed, raising two assignments of error for our review. Mr. Coury and Sovereign have cross-appealed, raising a single assignment of error for our review.

## II.

### ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED AS A MATTER OF LAW IN DETERMINING THAT THE STATUTE OF FRAUDS, O.R.C. §1335.05, DID NOT BAR COURY'S COUNTERCLAIMS BASED ON BREACH OF CONTRACT AND PROMISSORY ESTOPPEL. ACCORDINGLY, THE TRIAL COURT ERRED IN DENYING APPELLANTS' MOTION FOR SUMMARY JUDGMENT, MOTION FOR DIRECTED VERDICT AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND/OR NEW TRIAL AND IN ENTERING FINAL JUDGMENT IN FAVOR OF APPELLEE ON APPELLEES' COUNTERCLAIMS FOR BREACH OF CONTRACT AND PROMISSORY ESTOPPEL."

{¶12} In Mr. Krutowsky's and Mr. Bartlebaugh's first assignment of error, they contend that the trial court erred in denying their motions for summary judgment, directed verdict, judgment notwithstanding the verdict, and new trial as the statute of frauds barred Mr. Coury's breach of contract counterclaim and Sovereign's promissory estoppel claim. We disagree.

{¶13} We begin by noting that Mr. Krutowsky and Mr. Bartlebaugh did not point to any evidence from the record, or analysis, to support their argument that the trial court improperly

denied summary judgment. See App.R. 16(A)(7). Likewise, Mr. Krutowsky and Mr. Bartlebaugh did not identify the standard of review for a motion for new trial and did not discuss how the trial court erred in failing to grant their motion. See App.R. 16(A)(7). Accordingly, this Court will only consider whether the trial court erred in denying Mr. Krutowsky's and Mr. Bartlebaugh's motions for directed verdict and motion for judgment notwithstanding the verdict, as Mr. Krutowsky and Mr. Bartlebaugh did not discuss how the trial court erred in failing to grant their motion for summary judgment and motion for new trial.

{¶14} We review a trial court's ruling on a motion for a directed verdict de novo, as it presents a question of law. *Jarvis v. Stone*, 9th Dist. No. 23904, 2008-Ohio-3313, at ¶7. "A motion for a directed verdict assesses the sufficiency of the evidence, not the weight of the evidence or the credibility of the witnesses." Id. "[A] directed verdict is properly granted when 'the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party [.]'" Id. at ¶8, quoting Civ.R. 50(A)(4).

> "After a court enters judgment on a jury's verdict, a party may file a motion for judgment notwithstanding the verdict in order to have the judgment set aside on grounds other than the weight of the evidence. As with an appeal from a court's ruling on a directed verdict, this Court reviews a trial court's grant or denial of a judgment notwithstanding the verdict de novo. A judgment notwithstanding the verdict is proper if upon viewing the evidence in a light most favorable to the non-moving party and presuming any doubt to favor the non-moving party reasonable minds could come to but one conclusion, that being in favor of the moving party." (Internal citations and quotations omitted.) *Amore v. Ohio Turnpike Comm.,* 9th Dist. No. 25227, 2011-Ohio-1903, at ¶9.

{¶15} Essentially Mr. Krutowsky and Mr. Bartlebaugh assert that the trial court erred in denying their motions because the statute of frauds bars Mr. Coury's recovery on his breach of contract counterclaim and Sovereign's recovery on its promissory estoppel claim.

**Mr. Coury's Breach of Contract Counterclaim**

{¶16} Mr. Krutowsky and Mr. Bartlebaugh allege that the contract at issue could not have been performed within a year and thus it violates the statute of frauds. Additionally, Mr. Krutowsky and Mr. Bartlebaugh contend that the portion of the agreement providing Mr. Coury with a ten percent interest in Diplomate Land violates the statute of frauds as it concerns an interest in land. Mr. Krutowsky and Mr. Bartlebaugh have not otherwise challenged the trial court's denial of their motions.

{¶17} "Agreements that do not comply with the statute of frauds are unenforceable." *Olympic Holding Co., L.L.C. v. ACE Ltd.*, 122 Ohio St.3d 89, 2009-Ohio-2057, at ¶32. "The statute of frauds applies to agreements that cannot be performed within a year." Id. at ¶48; see, also, R.C. 1335.05 ("No action shall be brought whereby to charge the defendant * * * upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."). "When parties to an alleged agreement did not intend the agreement to be performed in less than a year, the statute of frauds renders that agreement unenforceable." *Olympic Holding Co., L.L.C.* at ¶48.

> "For over a century, the 'not to be performed within one year' provision of the Statute of Frauds, in Ohio and elsewhere, has been given a literal and narrow construction. The provision applies only to agreements which, by their terms, cannot be fully performed within a year, and not to agreements which may possibly be performed within a year. Thus, where the time for performance under an agreement is indefinite, or is dependent upon a contingency which may or may not happen within a year, the agreement does not fall within the Statute of Frauds." *Sherman v. Haines* (1995), 73 Ohio St.3d 125, 127.

{¶18} Mr. Krutowsky and Mr. Bartlebaugh assert that the oral contract at issue was not fully performed and could not be fully performed in a year and thus Mr. Coury could not recover under the contract. We observe that, in their merit briefs, the parties differ significantly as to their characterization of the contract at issue. Mr. Krutowsky and Mr. Bartlebaugh contend that the parties agreed to give Mr. Coury an ownership interest in exchange for his operation of the facility. Thus, they argue that for purposes of the statute of frauds, the central inquiry is the expected length of time Mr. Coury would operate the facility subsequent to the closing. By contrast, Mr. Coury asserted that in consideration for bringing the Patrician deal to the parties, they agreed that Mr. Coury would receive ownership interests in the Diplomate entities upon closing the deal. Mr. Coury denied that the agreement obligated him to operate the facility as a condition to receipt of his share in the businesses.

{¶19} The trial court concluded in its entry denying the motion for judgment notwithstanding the verdict that "[t]he agreement between the parties consists of the exchange of Coury's consideration for the ownership interest in the two companies. Not only did the parties intend to complete the transaction within one year, but in fact [Mr. Krutowsky and Mr. Bartlebaugh] completed the subject transactions in less than six months." Based upon the evidence adduced at trial viewed in the light most favorable to Mr. Coury, we conclude that reasonable minds could not come to one conclusion that was adverse to him and thus, we cannot conclude that the trial court erred in its determination.

{¶20} Mr. Krutowsky and Mr. Bartlebaugh acknowledge in their brief that "the parties did not specify a time period for their potential business relationship," and they concede that the parties never specified that the time for performance would exceed one year. Nonetheless, they contend that the oral contract violates the statute of frauds. Mr. Krutowsky and Mr. Bartlebaugh

point mainly to portions of Mr. Coury's trial testimony. Mr. Coury was asked repeatedly in different ways how long the contract was going to last. Mr. Coury was asked if the benefit he would receive from the contract would extend longer than a year, to which Mr. Coury answered in the affirmative. A page later, Mr. Coury was asked if the "agreements would have lasted for more than one year[.]" Mr. Coury responded, "Yes, ownership." Mr. Krutowsky and Mr. Bartlebaugh assert that this last response by Mr. Coury indicates that the contract would last longer than a year. However, viewing this testimony in a light most favorable to Mr. Coury, as we are required to do, Mr. Coury's testimony could be seen as admitting only that his ownership would continue over a year, not that the contract itself would not be completed in a year. In addition, he also could be viewed as admitting that he was receiving a benefit by virtue of his ownership that could be expected to last for longer than a year.

{¶21} Mr. Coury's position at trial was that following the closing, which was scheduled for, and took place on, February 15, 2008, under the contract he was entitled to his ownership interests in the Diplomate entities.

{¶22} Mr. Coury testified as follows at trial:

"Q: When you arrived at that meeting [during which a contract was allegedly formed], would you describe – from the time you arrived at that meeting, would you describe the conversation, please?

"A: Yes. Like I said, Chuck Calabrase, Tom Bartlebaugh, Steve Krutowsky, we talked about the Patrician.

"Steve had already done a walk-through as a potential family member, so he had an idea what the facility looked like. We talked about the plan for the Patrician.

" * * *

"I told him I had to have ownership in the deal and Steve looked at Tom and he said, 'What do you think, Tom?' And Tom said, '33 percent ownership in the operating company and 10 percent ownership in the real estate.' And I said, 'I agree. That's good. We'll move ahead.'

"Q: John, did you – at that point did you believe that you had a commitment from them?

"A: Absolutely, I did.

"Q: And you believe that they had a commitment from you?

"A: I did.

"Q: And what was the commitment that you made?

"A: Well, my commitment was that I brought them the deal and we were going to go in, operate the nursing home, turn it into the best nursing home on the south side of town."

{¶23} Viewing this testimony in conjunction with other testimony presented at trial in a light most favorable to Mr. Coury, it is reasonable to conclude that the contract, as described by Mr. Coury, could be performed in one year. As noted by the trial court, the contract was not only capable of being performed within a year, the oral agreement was in fact completed in less than six months, namely the Patrician acquisition closed, thereby entitling Mr. Coury to his ownership interest.

{¶24} Nonetheless, Mr. Krutowsky and Mr. Bartlebaugh assert that the agreement could not be performed within one year. They point to Mr. Coury's testimony that "we were going to go in, operate the nursing home" and similar other statements Mr. Coury made, such as "we were going to run it on a daily basis[,]" and assert these statements require the conclusion that the contract would not, and could not, be completed in a year. However, the testimony also indicates that it was Sovereign that Mr. Coury believed would operate the facility on a daily basis during the due diligence period and following closing. Thus, the "we" could be reasonably interpreted to refer to Sovereign and not Mr. Coury as an individual.

{¶25} Mr. Krutowsky and Mr. Bartlebaugh also assert that the contract with Mr. Coury was intended to last longer than one year. They contend that this is evidenced by the fact that Mr.

Coury and his accountant prepared financial projections for the Patrician extending out three years. However, the testimony at trial indicated that the three-year projections were necessary in order to obtain the loan to finance the purchase of the Patrician. Thus, we cannot say that preparation of these three-year projections requires the conclusion that the parties expected their contract to last more than a year. The same is true for the argument that Mr. Coury's inclusion of the fees Diplomate Healthcare would receive from the current ten-year lease of the operating rights of the Patrician in his calculation of damages also indicates the parties intended a contract lasting longer than a year. This fact does not require the conclusion that the parties intended the contract to last over a year; it could equally support the conclusion that at the completion of the contract on February 15, 2008, Mr. Coury was supposed to be a part owner of the operating company and thus it would be reasonable for him to receive proceeds from a lease of that operating company. Furthermore, there was additional evidence adduced at trial from which one could reasonably conclude that the parties intended the agreement to be completed within one year. The evidence established that the parties intended for closing to occur on February 15, 2008, less than six months after reaching their agreement. Subsequent to reaching the oral agreement, Mr. Coury engaged the services of his attorney and accountant and Sovereign in completing the necessary paperwork, documentation and financial reports and projections which were necessary in order to ensure that closing would occur as anticipated on February 15, 2008.

{¶26} Next, Mr. Krutowsky and Mr. Bartlebaugh assert that the oral agreement providing that Mr. Coury would receive a 10% interest in Diplomate Land violates the statute of frauds because it is an oral contract concerning an interest in land. We disagree.

{¶27} R.C. 1335.05 provides in pertinent part that "[n]o action shall be brought whereby to charge the defendant, * * * upon a contract or sale of lands, tenements, or hereditaments, or

interest in or concerning them, * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."

{¶28} We see no merit in Mr. Krutowsky's and Mr. Bartlebaugh's argument. The oral contract entitled Mr. Coury to a 10% interest in Diplomate Land, an entity created to own the real estate of the Patrician; the oral contract did not concern land nor did it involve Mr. Coury acquiring an interest in land. Mr. Coury was not to receive a 10% interest in the real estate of the Patrician, he was to receive a 10% interest in the entity that would own the Patrician. None of the cases cited by Mr. Krutowsky or Mr. Bartlebaugh in support of their argument are factually on point, nor do they support the conclusion that the contract at issue involved an interest in land.

**Sovereign's Promissory Estoppel Claim**

{¶29} At trial, Sovereign offered testimony that Mr. Krutowsky and Mr. Bartlebaugh promised that Sovereign would operate the Patrician once it was acquired. In reliance upon that promise, Sovereign discontinued operating two nursing homes. Mr. Krutowsky and Mr. Bartlebaugh appear to assert that the trial court erred in denying their motions for directed verdict and judgment notwithstanding the verdict because Sovereign's promissory estoppel counterclaim is really a contract claim which is barred by the statute of frauds. In so doing, Mr. Krutowsky and Mr. Bartlebaugh essentially base their argument on a jury interrogatory which asks, "Do you find by the greater weight of the evidence that Stephen Krutowsky and Thomas Bartlebaugh are prevented or estopped from denying an oral contract with Sovereign Healthcare based on the doctrine of promissory estoppel?" The jury responded affirmatively.

{¶30} Mr. Krutowsky and Mr. Bartlebaugh claim that this interrogatory demonstrates that Sovereign's promissory estoppel counterclaim violates the statute of frauds and in particular

the holding of *Olympic Holding Co., L.L.C.* In *Olympic Holding Co., L.L.C.,* the Supreme Court of Ohio held that "a party may not use promissory estoppel to bar the opposing party from asserting the affirmative defense of the statute of frauds, which requires that an enforceable contract be in writing and signed by the party to be charged, but may pursue promissory estoppel as a separate remedy for damages." Id. at ¶38. Thus, the Supreme Court essentially agreed with the trial court, which concluded that:

> "promissory estoppel did not remove this agreement from the statute of frauds, and therefore, the Olympic Group could not use promissory estoppel to bar ACE from asserting the statute of frauds as an affirmative defense to Olympic Group's breach-of-contract claims. * * * However, Olympic Group's claim of promissory estoppel, seeking detrimental-reliance damages, survived summary judgment[.]" Id. at ¶23.

{¶31} Notably, however, Mr. Krutowsky and Mr. Bartlebaugh do not dispute that in its complaint, Sovereign asserted a valid counterclaim for promissory estoppel. Further, they do not argue that the *evidence* presented at trial is insufficient to support that promissory estoppel counterclaim. See *Jarvis* at ¶8 (noting the standard for directed verdict); *Amore* at ¶9 (noting the standard for judgment notwithstanding the verdict). They do not assert that the jury instruction on the promissory estoppel counterclaim was improper, and at trial, did not complain about the submission of the interrogatory. Moreover, they do not point to anything in the record which demonstrates that the trial court affirmatively concluded that Sovereign could employ principles of estoppel as means of avoiding the statute of frauds in violation of the holding of *Olympic Holding Co., L.L.C.* Instead, their argument concerning the statute of frauds is conclusory in nature. Finally, we note that despite the fact Mr. Krutowsky and Mr. Bartlebaugh assert that Sovereign's promissory estoppel counterclaim violates the statute of frauds, they have failed to articulate in their brief to this Court which portion of the statute they believe is violated. See App.R. 16(A)(7).

{¶32} With respect to the jury interrogatory as it relates to Mr. Krutowsky's and Mr. Bartlebaugh's motion for directed verdict, we also observe that their argument is completely premised on the contents of documents that were not completed (i.e. the jury interrogatory and damages award) at the point in time that they raised their motion for directed verdict. Thus, we cannot say that the trial court erred in denying the motion for directed verdict on the basis that Mr. Krutowsky and Mr. Bartlebaugh now assert in this Court. See, e.g., *Rennaci v. Evans*, 9th Dist. No. 09CA0004-M, 2009-Ohio-5154, at ¶24.

{¶33} With respect to their motion for judgment notwithstanding the verdict, while Mr. Krutowsky and Mr. Bartlebaugh did assert that the promissory estoppel counterclaim was barred by the statute of frauds, they did not do so on the basis of a problematic jury interrogatory or the jury's damages award. Thus, the trial court also did not have the benefit of considering this argument when ruling on the motion for judgment notwithstanding the verdict. "It is axiomatic that a litigant who fails to raise an argument in the trial court forfeits his right to raise that issue on appeal." (Internal quotations and citations omitted.) Id.

{¶34} Mr. Krutowsky and Mr. Bartlebaugh additionally claim that their position is supported because they contend that the jury awarded Sovereign contract damages as opposed to detrimental reliance damages on its promissory estoppel counterclaim. However, Mr. Krutowsky and Mr. Bartlebaugh have not explained how they have reached the conclusion that the jury awarded contract damages as opposed to detrimental reliance damages. See App.R. 16(A)(7).

{¶35} In light of all of the above, we overrule Mr. Krutowsky's and Mr. Bartlebaugh's argument with respect to Sovereign's promissory estoppel counterclaim.

{¶36} Accordingly, we overrule Mr. Krutowsky's and Mr. Bartlebaugh's first assignment of error.

## ASSIGNMENT OF ERROR II

"THE TRIAL COURT ERRED AS A MATTER OF LAW IN ADMITTING HEARSAY EVIDENCE AT TRIAL, TO THE PREJUDICE OF APPELLANTS. ACCORDINGLY, THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANTS' MOTION FOR NEW TRIAL."

{¶37} In Mr. Krutowsky's and Mr. Bartlebaugh's second assignment of error they assert that the trial court erred in admitting a portion of Thomas Hess' testimony as it was inadmissible hearsay and therefore the trial court erred in denying Mr. Krutowsky's and Mr. Bartlebaugh's motion for a new trial.

{¶38} Mr. Krutowsky and Mr. Bartlebaugh specifically assert that Mr. Hess should not have been permitted to testify that Mr. Coury told Mr. Hess that Mr. Coury was to receive a "10 percent ownership interest in the land owning company and a 33 percent ownership interest in the operating company[]" and that Mr. Coury told Mr. Hess "that it was not necessary to put [the agreement] in writing.  He trusted Mr. Krutowsky."

{¶39} We conclude that Mr. Krutowsky and Mr. Bartlebaugh have forfeited this argument.  Pursuant to Evid.R. 103(A), "[e]rror may not be predicated upon a ruling which admits * * * evidence unless a substantial right of the party is affected, and * * * a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context[.]"  In the instant matter the following dialogue occurred at trial prior to the testimony at issue:

"Q:  What did [Mr. Coury] tell you?

"[Mr. Hess]:  He was going to partner up with Mr. Krutowsky.

"Q:  Did Mr. Coury describe their relationship?

"[Mr. Krutowsky's and Mr. Bartlebaugh's Counsel]: Objection.

"THE COURT: Overruled. I assume – so that the record is clear, I assume that your client is waiving the attorney-client privilege here?

"[Mr. Coury's counsel]: Yes, sir.

"THE COURT: Is that your understanding?

"[Mr. Hess]: Yes, sir.

"THE COURT: Mr. Coury, is that correct?

"MR. COURY: Yes, it is, Judge.

"THE COURT: Go ahead."

The objection listed above is the only objection that was made. Following the trial court's ruling, the following testimony took place:

"Q: Did he describe the terms of that partnership for you?

"[Mr. Hess]: He said Mr. Coury was going to have a 10 percent ownership interest in the land owning company and a 33 percent ownership interest in the operating company.

"Q: Mr. Hess, did you have a discussion about whether the agreement was in writing?

"[Mr. Hess]: Yes, we did.

"Q: Describe that discussion.

"[Mr. Hess]: Well, being an attorney, I like to have those kinds of discussions memorialized and recorded in writing. And Mr. Coury said that was not necessary to put it in writing. He trusted Mr. Krutowsky."

**{¶40}** While Mr. Krutowsky's and Mr. Bartlebaugh's attorney initially objected to the line of questioning, the attorney failed to delineate a specific basis for the objection. Further, from the trial court's response to the objection, it is clear that the trial court believed that the basis for the objection was attorney-client privilege. There is nothing in the record to suggest that Mr. Krutowsky's and Mr. Bartlebaugh's attorney was objecting on the basis of hearsay.

This is so particularly since the attorney did not clarify the basis of the attorney's objection after the trial court made its ruling based upon attorney-client privilege. Accordingly, Mr. Krutowsky and Mr. Bartlebaugh have forfeited all but plain error. See Evid.R. 103(A), (D). Further, Mr. Krutowsky and Mr. Bartlebaugh have not argued plain error on appeal and this Court declines to construct an argument for them on that basis, particularly given the limited applications the plain error doctrine has in civil cases. See *Renacci* at ¶24. Therefore, we overrule Mr. Krutowsky's and Mr. Bartlebaugh's second assignment of error.

III.

CROSS-ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING CROSS-APPELLEES' MOTION FOR DIRECTED VERDICT ON CROSS-APPELLANTS' COUNTERCLAIM FOR FRAUDULENT/INTENTIONAL MISREPRESENTATION."

{¶41} In Mr. Coury's and Sovereign's sole cross-assignment of error, they assert the trial court erred in granting a directed verdict on their counterclaim for fraudulent/intentional misrepresentation. However, because they only seek reversal on this issue if this Court sustained Mr. Krutowsky's and Mr. Bartlebaugh's assignments of error, and this Court has not done so, this Court declines to address the merits of this argument.

IV.

{¶42} In light of the foregoing, we affirm the judgment of the Summit County Court of Common Pleas.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants/Cross-Appellees.

EVE V. BELFANCE
FOR THE COURT

MOORE, J.
DICKINSON, P. J.
CONCUR

APPEARANCES:

JAMES D. ROBENALT, KAREN E. RUBIN, and HOLLY ARMSTRONG, Attorneys at Law, for Appellants/Cross-Appellees.

HARRY A. TIPPING, and CHRISTOPHER A. TIPPING, Attorneys at Law, for Appellants/Cross-Appellees.

WILLIAM D. DOWLING, DAVID P. BERTSCH, and G. BRENDA COEY, Attorneys at Law, for Appellees/Cross-Appellants.